UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAUL ZUCCARO,<br><br>                  Plaintiff,<br><br>     v.<br><br>MOBILEACCESS NETWORKS, INC., a<br>Virginia corporation,<br><br>                Defendant. | CASE NO. C11-272 MJP<br><br>ORDER DENYING IN PART AND<br>GRANTING IN PART<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT AND<br>GRANTING DEFENDANT'S<br>MOTION TO SEAL |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 31 and 32) and Defendant's contemporaneous motion to seal (Dkt. No. 29). Having reviewed the motions, the responses (Dkt. No. 60 and 64), the replies (Dkt. No. 63 and 68), and all related filings, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment and GRANTS Defendant's motion to seal.

**Background**

Plaintiff Paul Zuccaro ("Zuccaro") worked for Defendant MobileAccess Networks, Inc. ("MobileAccess") from September 2006 to August 2009. (Zuccaro Decl., ¶ 2.) Zuccaro is suing

1    MobileAccess for breach of contract, state wage violations, and wrongful discharge.  (Compl. ¶¶

2    12-14.)

3        Zuccaro was hired as MobileAccess's Director of Channel Development.  (Southworth

4    Decl., ¶ 7.)  As Director of Channel Development, Zuccaro was responsible for managing

5    MobileAccess's relationships with value-added resellers ("VAR").  (Id.)  Zuccaro's

6    compensation package had three components:  a base salary, sales commissions, and

7    Management-Based Objectives ("MBO") bonuses that were developed each year by

8    management.  (Durbin Decl. ¶ 7.)  Zuccaro claims MobileAccess failed to pay him two MBO

9    bonuses in 2008, his sales commission in 2009, and that, when he inquired about the MBOs, he

10    was fired in retaliation.

11        MobileAccess's 2008 MBO structure was set forth in an email from Zuccaro's manager,

12    Martin Medansky, to Zuccaro on May 18, 2008.  (Durbin Decl., Ex. C.)  In 2008, there were two

13    separate MBO opportunities:  MBO1 awarded $30,000 in exchange for "[d]evelop[ing] national

14    strategic partners to critical mass of business ($1M each)" and MBO2 provided a bonus based on

15    the percentage of sales.  (Id.)  Zuccaro believes MobileAccess owes him for his work with two

16    VARs—Black Box Networks and Tri-Power.

17        Black Box is affiliated with Cisco, with regional offices throughout the United States.  In

18    2008, MobileAccess invited Black Box to bid on a project to install a MobileAccess wireless

19    system at Parkland Hospital in Dallas, Texas ("the Parkland Project"). (Cune Decl., ¶ 17.)  The

20    Parkland Project resulted in over one million dollars in revenue for MobileAccess.  The Black

21    Box account, however, did not generate any other sale of MobileAccess products other than the

22    Parkland Project.  (Id. at ¶ 17(d).)

23

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S
MOTION TO SEAL- 2

1  Tri-Power is a VAR, primarily focused on the West Coast.  (Durbin Decl. ¶ 7, Ex. I

2  (Cune Dep. 151:3-8.)  Originally, the Tri-Power account was managed by a sales engineer who

3  provided technical support to regional salespeople.  (Id. (Cune Dep. 150:8-151:1).)  In February

4  2008, however, Zuccaro took over the Tri-Power Account.  (Durbin Decl., ¶ 5 & Ex. B (Zuccaro

5  Dep. 52:22-53:2.)).  In 2008, the Tri-Power Account resulted in over one million dollars in

6  revenue.  (Spurr Decl., Ex. A (Cune Dep. 81-82).)

7  At the end of the year, MobileAccess's Compensation Committee, including Vice

8  President of Sales Bill Cune, determined whether employees had earned their MBOs.  (Cune

9  Decl., ¶ 13.)  MobileAccess did not award MBOs to any employee related to the Black Box

10  account because all Black Box revenue derived from a single project and the Parkland Project

11  was not a sales opportunity brought to MobileAccess by Black Box.  (Cune Decl., ¶ 17(a).)   No

12  one was awarded an MBO1 for Tri-Power because Tri-Power was considered a "legacy VAR"

13  and not a "national strategic partner" for whom the MBO1 bonus structure applied.  (Cune Decl.,

14  ¶ 15.)

15  In March 2009, Zuccaro asked his manager, Medansky, about when his 2008 MBO1 for

16  Black Box would be paid.  (Durbin Decl., Ex. E.)  He was told he was not eligible for MBO1

17  because Black Box was not developed to "critical mass."  (Id.)   In June 2009, Zuccaro again

18  sent Medansky emails regarding his MBO1 bonus for Black Box.  (Durbin Decl., Ex. F.)  He

19  emailed Medansky in June 2009 because Medansky was being transitioned out of the sales group

20  and Zuccaro wanted to address the issue before his departure.  (Braunschweig Decl., Ex. H.)

21  MobileAccesss's Chief Financial Officer, Michael Southworth, reviewed the sales management

22  team's decision and confirmed Zuccaro was not entitled to an MBO bonus.  (Southworth Decl., ¶

23  15.)  Southworth memorialized the decision in an email on July 31, 2009, after Zuccaro

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S
MOTION TO SEAL- 3

1  requested it in writing.  (Zuccaro Decl., Ex. H.)  The email stated, "our position is that Black Box

2  was not successfully 'developed' (i.e., set-up for future sustainable business).  As a result, we did

3  not pay MBOs relating to this objective for any of the team members."  (Id.)

4      Because MobileAccess's overall financial condition deteriorated in 2008 and 2009, the

5  company hired new management and executive-level employees, including Darlene Brauschweig

6  who became Senior Vice President of Worldwide Sales.  (Southworth Decl. ¶¶ 10-11.)  Under

7  Brauschweig's management, approximately fifty percent of MobileAccess's sales team were

8  terminated between December 2008 and August 2009.  (Southworth Decl. ¶ 11.)  Zuccaro's

9  employment was terminated in August 2009.  (Braunschweig Decl. ¶ 14 & Ex. G.)

10  **Analysis**

11  A.  Motion for Summary Judgment

12      Summary judgment is appropriate if "the movant shows that there is no genuine dispute

13  as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

14  56(a). In determining whether an issue of fact exists, the Court must view all evidence in the

15  light most favorable to the nonmoving party and draw all reasonable inferences in that party's

16  favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986). The nonmoving party

17  bears the burden of showing that there is no evidence which supports an element essential to the

18  nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

19      MobileAccess seeks summary judgment on three issues:  whether Zuccaro is owed an

20  MBO bonus, whether MobileAccess violated state wage statutes by not paying him that bonus,

21  and whether he was wrongfully terminated.  MobileAccess does not seek summary judgment

22  regarding Zuccaro's claim that MobileAccess failed to pay him sales commissions for 2009.

23  The Court finds Defendant's argument persuasive as to the issue of wrongful termination only.

24

1. <u>Bonus</u>

For purposes of this motion, MobileAccess concedes the Black Box and Tri-Power accounts resulted in over one million dollars in revenue in 2008.  MobileAccess nevertheless argues the MBO bonus structure also imposed a qualitative requirement—i.e., to develop relationships with "national strategic partners" to "critical mass"—and Tri-Power was not a "national strategic partner" and Black Box was only a one-time engagement.  The Court disagrees. A factual dispute exists as to whether Zuccaro is owed an MBO1 bonus for Black Box and/or Tri-Power.

First, the Court finds an issue of material fact exists as to whether Zuccaro is owed a bonus for the Black Box account.  In construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous.  <u>Dice v. City of Montesano</u>, 131 Wash.App. 675, 683-4 (2006).  If ambiguity exists, the contract is construed against the drafter.  <u>Wilkins v. Grays Harbor Community Hospital</u>, 71 Wash.2d 178, 185 (Wash. 1967).

Here, the MBO1 objective was to "[d]evelop national strategic partners to critical mass of business ($1M each)."  (Durbin Decl., Ex. C.)  Both parties agree Black Box, as an affiliate of Cisco, was considered a national strategic partner.  An ambiguity exists as to whether the "$1M each" in parenthesis was a quantitative definition for "develop national strategic partners to critical mass" or merely a necessary, but not sufficient, condition for an MBO1 bonus.  (<u>See</u> Cune Decl., ¶ 12.)  While courts do not construe contracts so as to render a term absurd or meaningless, <u>see</u> <u>MacLean Townhomes, LLC v. America 1st Roofing & Builders Inc.</u>, 133

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION TO SEAL- 5

1   Wash.App. 828, 831 (2006), it's reasonable to interpret the MBO1 objective as requiring

2   Zuccaro only obtain $1M in revenue from the Black Box account in order to receive the bonus.

3         To the extent MobileAccess argues Zuccaro should have known based on context that

4   more than $1M in sales was required to receive an MBO1 bonus, the argument is more

5   appropriately made at trial.  Regardless of Zuccaro's discussions with sales managers about how

6   to expand business into Black Box's other regional offices and/or convene meetings between

7   MobileAccess and Black Box executives, the discussions were not made with respect to MBO1

8   requirements.  Even if Medansky and Cune thought "critical mass of business" meant more than

9   merely a million dollar in sales, <u>see</u> Durbin Decl., Ex. A (Medansky Dep. 138:18-25), Zuccaro

10  was not told that an MBO1bonus required expansion into Black Box's other regional offices.

11  Since (a) a factual dispute exists as to whether these qualitative responsibilities were part of

12  MBO1's requirements and (b) Zuccaro's interpretation does not render any term absurd or

13  meaningless, the Court finds Defendant's motion for summary judgment unpersuasive.

14        Second, a factual dispute exists as to whether Zuccaro is owed an MBO1 bonus for Tri-

15  Power.   While Defendant argues the MBO1 structure applied only to "national strategic

16  partners" and not "legacy" VARs, "national strategic partner" was not properly defined in the

17  MBO1 structure.   In addition, Defendant concedes that no one from MobileAccess ever

18  informed Zuccaro that Tri-Power was exempt from the MBO1 structure.  (Zuccaro Decl., ¶ 6.)

19  While Defendant presents evidence that Zuccaro may have known that the MBO1 structure was

20  limited to accounts related to Cisco, (Medansky Decl., Ex. A and B), Zuccaro has demonstrated a

21  genuine issue of material fact to survive summary judgment.  To the extent Defendants point out

22  Zuccaro only ever asked the sales managers about an MBO1 bonus for his work on Black Box,

23  (See Durbin Decl., Exs. E and F), and never asked about an MBO1 bonus related to Tri-Power,

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S
MOTION TO SEAL- 6

1  (See also Ex. B (Zuccaro Dep. 48:12-16)), Defendants' argument is better made at trial.  Zuccaro

2  contends he didn't know the Tri-Power account had hit $1M until a year later when the orders

3  shipped.  (Zuccaro Decl., ¶ 7.)  Regardless of whether Zuccaro's argument ultimately prevails at

4  trial, a factual dispute precludes summary judgment at this stage.

5         The Court DENIES Defendant's motion for summary judgment with respect to whether

6  Zuccaro is owed an MBO1 bonus for his work on the Black Box and Tri-Power accounts.

7         2.  State wage violations

8         In Washington, RCW 49.48 and 49.52 penalize employers who willfully withhold wages.

9  RCW 49.48 and 49.52.  Given a factual dispute exists over whether MobileAccess owes Zuccaro

10  an MBO1 bonus for the Black Box account, the Court DENIES summary judgment on the state

11  wage violation claims.  However, the Court precludes Zuccaro's claim for double damages.

12  While an employer shall be liable to the employee for twice the wages it unlawfully and willfully

13  withheld, the existence of a bona fide dispute is enough to preclude a finding of willfulness.

14  Dice v. City of Montesano, 131 Wash.App. 675, 688 (2006); see also RCW 49.52.070.  Here,

15  there is a genuine question as to whether the MBO1 objective required Zuccaro do more than just

16  meet $1M in sales revenue.  Since MobileAccess did not willfully withhold his wages, Zuccaro

17  is not entitled to double damages.

18         3.  Wrongful Termination

19         The Court GRANTS Defendant's motion for summary judgment regarding wrongful

20  termination.

21         Zuccaro alleges his termination violated Washington public policy.  In Washington, a

22  wrongful discharge in violation of public policy requires (1) the existence of a clear mandate of

23  public policy (clarity), (2) that discouraging the conduct would jeopardize the public policy

24

1  (jeopardy), (3) the employee's public policy linked conduct caused the termination (causation),

2  and (4) the employer's reason for the discharge is insufficient to override the clear mandate of

3  public policy (absence of justification).  <u>Gardner v. Loomis Armored Inc.</u>, 913 P.2d 377, 382

4  (Wash. 1996).

5          Here, MobileAccess had a legitimate business reason for terminating Zuccaro's

6  employment.  MobileAccess was undergoing a corporate reorganization in 2008 and 2009.

7  (Southworth Decl. ¶¶ 10-11.)  During this time, half of MobileAccess's sales team was

8  terminated.  (Southworth Decl. ¶ 11.)  Even assuming Washington created a public policy

9  mandate with respect to the payment of wages, MobileAccess's reason for the discharge

10 overrides the public policy mandate.  To the extent Zuccaro was terminated after he requested his

11 MBO1 bonus in July 2009, the temporal proximity of his third request for an MBO1 bonus is not

12 enough to survive summary judgment.  MobileAccess's managers had considered terminating

13 Zuccaro in February 2009—even before his first request for an MBO1 bonus.  (Braunschweig

14 Decl. ¶ 7 & Ex. B.)  In addition, Zuccaro originally asked about his bonus in March 2009, yet he

15 was not terminated until August 2009.

16         Since there is no genuine issue of material fact that Zuccaro's termination was not in

17 retaliation for his request for an MBO1 bonus, the Court GRANTS summary judgment and

18 DISMISS Zuccaro's wrongful termination claim.

19 B.  <u>Motion to Seal</u>

20         MobileAccess contemporaneously filed a motion to seal in accordance with the Court's

21 Local Rules.  Specifically, MobileAccess seeks to file a redacted version of the summary

22 judgment motion and a supporting declaration and file under several exhibits relating to

23

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S
MOTION TO SEAL- 8

1  MobileAccess's business practices and personnel information.  The Court GRANTS Defendant's

2  properly filed motion to seal.

3      Under Local Rule 5(g), there is a strong presumption of public access to the court's files.

4  However, a party may overcome the presumption by motion.  Here, MobileAccess seeks to seal

5  documents that may cause it competitive harm and/or relate to employees' private data.  While

6  Zuccaro argues no real competitive danger exists, Zuccaro's argument is unavailing.  The

7  documents include consolidated financial statements, spreadsheets containing base salaries,

8  targets, and expected bonus and commission compensation, and email communications between

9  MobileAccess officers regarding various business and employment decisions.   MobileAccess

10 supports its motion with an affidavit by Chief Financial Officer Michael Southworth, attesting

11 that the documents have not been publicly available.

12     Since MobileAccess has overcome the presumption of public access, the Court GRANTS

13 Defendant's motion to seal.

14 \\

15 \\

16 \\

17 \\

18 \\

19 \\

20 \\

21 \\

22 \\

23 \\

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S
MOTION TO SEAL- 9

1

**Conclusion**

2        The Court DENIES Defendant's motion for summary judgment with respect to the bonus

3   and state wage claims.  A factual dispute exists as to whether the MBO1 bonus structure applied

4   to Zuccaro's work on Tri-Power and Black Box.  The Court GRANTS Defendant's motion for

5   summary judgment with respect to Plaintiff's wrongful termination claim.  The Court GRANTS

6   Defendant's motion to seal.

7        The clerk is ordered to provide copies of this order to all counsel.

8        Dated this <u>30th</u> day of January, 2012.

9

10                                                            _____
                                                             Marsha J. Pechman

11                                                           United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING IN PART AND GRANTING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S
MOTION TO SEAL- 10