UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAUL ZUCCARO,<br><br>        Plaintiff,<br><br>    v.<br><br>MOBILEACCESS NETWORKS, INC., a Virginia corporation,<br><br>        Defendant. | CASE NO. C11-272 MJP<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION TO SEAL |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 31 and 32) and Defendant's contemporaneous motion to seal (Dkt. No. 29). Having reviewed the motions, the responses (Dkt. No. 60 and 64), the replies (Dkt. No. 63 and 68), and all related filings, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment and GRANTS Defendant's motion to seal.

**Background**

Plaintiff Paul Zuccaro ("Zuccaro") worked for Defendant MobileAccess Networks, Inc. ("MobileAccess") from September 2006 to August 2009. (Zuccaro Decl., ¶ 2.) Zuccaro is suing

MobileAccess for breach of contract, state wage violations, and wrongful discharge. (Compl. ¶¶ 12-14.)

Zuccaro was hired as MobileAccess's Director of Channel Development. (Southworth Decl., ¶ 7.) As Director of Channel Development, Zuccaro was responsible for managing MobileAccess's relationships with value-added resellers ("VAR"). (Id.) Zuccaro's compensation package had three components: a base salary, sales commissions, and Management-Based Objectives ("MBO") bonuses that were developed each year by management. (Durbin Decl. ¶ 7.) Zuccaro claims MobileAccess failed to pay him two MBO bonuses in 2008, his sales commission in 2009, and that, when he inquired about the MBOs, he was fired in retaliation.

MobileAccess's 2008 MBO structure was set forth in an email from Zuccaro's manager, Martin Medansky, to Zuccaro on May 18, 2008. (Durbin Decl., Ex. C.) In 2008, there were two separate MBO opportunities: MBO1 awarded $30,000 in exchange for "[d]evelop[ing] national strategic partners to critical mass of business ($1M each)" and MBO2 provided a bonus based on the percentage of sales. (Id.) Zuccaro believes MobileAccess owes him for his work with two VARs—Black Box Networks and Tri-Power.

Black Box is affiliated with Cisco, with regional offices throughout the United States. In 2008, MobileAccess invited Black Box to bid on a project to install a MobileAccess wireless system at Parkland Hospital in Dallas, Texas ("the Parkland Project"). (Cune Decl., ¶ 17.) The Parkland Project resulted in over one million dollars in revenue for MobileAccess. The Black Box account, however, did not generate any other sale of MobileAccess products other than the Parkland Project. (Id. at ¶ 17(d).)

Tri-Power is a VAR, primarily focused on the West Coast. (Durbin Decl. ¶ 7, Ex. I (Cune Dep. 151:3-8.) Originally, the Tri-Power account was managed by a sales engineer who provided technical support to regional salespeople. (Id. (Cune Dep. 150:8-151:1).) In February 2008, however, Zuccaro took over the Tri-Power Account. (Durbin Decl., ¶ 5 & Ex. B (Zuccaro Dep. 52:22-53:2.)). In 2008, the Tri-Power Account resulted in over one million dollars in revenue. (Spurr Decl., Ex. A (Cune Dep. 81-82).)

At the end of the year, MobileAccess's Compensation Committee, including Vice President of Sales Bill Cune, determined whether employees had earned their MBOs. (Cune Decl., ¶ 13.) MobileAccess did not award MBOs to any employee related to the Black Box account because all Black Box revenue derived from a single project and the Parkland Project was not a sales opportunity brought to MobileAccess by Black Box. (Cune Decl., ¶ 17(a).) No one was awarded an MBO1 for Tri-Power because Tri-Power was considered a "legacy VAR" and not a "national strategic partner" for whom the MBO1 bonus structure applied. (Cune Decl., ¶ 15.)

In March 2009, Zuccaro asked his manager, Medansky, about when his 2008 MBO1 for Black Box would be paid. (Durbin Decl., Ex. E.) He was told he was not eligible for MBO1 because Black Box was not developed to "critical mass." (Id.) In June 2009, Zuccaro again sent Medansky emails regarding his MBO1 bonus for Black Box. (Durbin Decl., Ex. F.) He emailed Medansky in June 2009 because Medansky was being transitioned out of the sales group and Zuccaro wanted to address the issue before his departure. (Braunschweig Decl., Ex. H.) MobileAccesss's Chief Financial Officer, Michael Southworth, reviewed the sales management team's decision and confirmed Zuccaro was not entitled to an MBO bonus. (Southworth Decl., ¶ 15.) Southworth memorialized the decision in an email on July 31, 2009, after Zuccaro

requested it in writing. (Zuccaro Decl., Ex. H.) The email stated, "our position is that Black Box was not successfully 'developed' (i.e., set-up for future sustainable business). As a result, we did not pay MBOs relating to this objective for any of the team members." (Id.)

Because MobileAccess's overall financial condition deteriorated in 2008 and 2009, the company hired new management and executive-level employees, including Darlene Brauschweig who became Senior Vice President of Worldwide Sales. (Southworth Decl. ¶¶ 10-11.) Under Brauschweig's management, approximately fifty percent of MobileAccess's sales team were terminated between December 2008 and August 2009. (Southworth Decl. ¶ 11.) Zuccaro's employment was terminated in August 2009. (Braunschweig Decl. ¶ 14 & Ex. G.)

**Analysis**

A. <u>Motion for Summary Judgment</u>

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248–50 (1986). The nonmoving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

MobileAccess seeks summary judgment on three issues: whether Zuccaro is owed an MBO bonus, whether MobileAccess violated state wage statutes by not paying him that bonus, and whether he was wrongfully terminated. MobileAccess does not seek summary judgment regarding Zuccaro's claim that MobileAccess failed to pay him sales commissions for 2009. The Court finds Defendant's argument persuasive as to the issue of wrongful termination only.

1. <u>Bonus</u>

For purposes of this motion, MobileAccess concedes the Black Box and Tri-Power accounts resulted in over one million dollars in revenue in 2008. MobileAccess nevertheless argues the MBO bonus structure also imposed a qualitative requirement—i.e., to develop relationships with "national strategic partners" to "critical mass"—and Tri-Power was not a "national strategic partner" and Black Box was only a one-time engagement. The Court disagrees. A factual dispute exists as to whether Zuccaro is owed an MBO1 bonus for Black Box and/or Tri-Power.

First, the Court finds an issue of material fact exists as to whether Zuccaro is owed a bonus for the Black Box account. In construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous. <u>Dice v. City of Montesano</u>, 131 Wash.App. 675, 683-4 (2006). If ambiguity exists, the contract is construed against the drafter. <u>Wilkins v. Grays Harbor Community Hospital</u>, 71 Wash.2d 178, 185 (Wash. 1967).

Here, the MBO1 objective was to "[d]evelop national strategic partners to critical mass of business ($1M each)." (Durbin Decl., Ex. C.) Both parties agree Black Box, as an affiliate of Cisco, was considered a national strategic partner. An ambiguity exists as to whether the "$1M each" in parenthesis was a quantitative definition for "develop national strategic partners to critical mass" or merely a necessary, but not sufficient, condition for an MBO1 bonus. (<u>See</u> Cune Decl., ¶ 12.) While courts do not construe contracts so as to render a term absurd or meaningless, <u>see</u> <u>MacLean Townhomes, LLC v. America 1st Roofing & Builders Inc.</u>, 133

1 | Wash.App. 828, 831 (2006), it's reasonable to interpret the MBO1 objective as requiring
2 | Zuccaro only obtain $1M in revenue from the Black Box account in order to receive the bonus.

To the extent MobileAccess argues Zuccaro should have known based on context that more than $1M in sales was required to receive an MBO1 bonus, the argument is more appropriately made at trial. Regardless of Zuccaro's discussions with sales managers about how to expand business into Black Box's other regional offices and/or convene meetings between MobileAccess and Black Box executives, the discussions were not made with respect to MBO1 requirements. Even if Medansky and Cune thought "critical mass of business" meant more than merely a million dollar in sales, see Durbin Decl., Ex. A (Medansky Dep. 138:18-25), Zuccaro was not told that an MBO1bonus required expansion into Black Box's other regional offices. Since (a) a factual dispute exists as to whether these qualitative responsibilities were part of MBO1's requirements and (b) Zuccaro's interpretation does not render any term absurd or meaningless, the Court finds Defendant's motion for summary judgment unpersuasive.

Second, a factual dispute exists as to whether Zuccaro is owed an MBO1 bonus for Tri-Power. While Defendant argues the MBO1 structure applied only to "national strategic partners" and not "legacy" VARs, "national strategic partner" was not properly defined in the MBO1 structure. In addition, Defendant concedes that no one from MobileAccess ever informed Zuccaro that Tri-Power was exempt from the MBO1 structure. (Zuccaro Decl., ¶ 6.) While Defendant presents evidence that Zuccaro may have known that the MBO1 structure was limited to accounts related to Cisco, (Medansky Decl., Ex. A and B), Zuccaro has demonstrated a genuine issue of material fact to survive summary judgment. To the extent Defendants point out Zuccaro only ever asked the sales managers about an MBO1 bonus for his work on Black Box, (See Durbin Decl., Exs. E and F), and never asked about an MBO1 bonus related to Tri-Power,

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION TO SEAL- 6

(See also Ex. B (Zuccaro Dep. 48:12-16)), Defendants' argument is better made at trial. Zuccaro contends he didn't know the Tri-Power account had hit $1M until a year later when the orders shipped. (Zuccaro Decl., ¶ 7.) Regardless of whether Zuccaro's argument ultimately prevails at trial, a factual dispute precludes summary judgment at this stage.

The Court DENIES Defendant's motion for summary judgment with respect to whether Zuccaro is owed an MBO1 bonus for his work on the Black Box and Tri-Power accounts.

2. State wage violations

In Washington, RCW 49.48 and 49.52 penalize employers who willfully withhold wages. RCW 49.48 and 49.52. Given a factual dispute exists over whether MobileAccess owes Zuccaro an MBO1 bonus for the Black Box account, the Court DENIES summary judgment on the state wage violation claims. However, the Court precludes Zuccaro's claim for double damages. While an employer shall be liable to the employee for twice the wages it unlawfully and willfully withheld, the existence of a bona fide dispute is enough to preclude a finding of willfulness. Dice v. City of Montesano, 131 Wash.App. 675, 688 (2006); see also RCW 49.52.070. Here, there is a genuine question as to whether the MBO1 objective required Zuccaro do more than just meet $1M in sales revenue. Since MobileAccess did not willfully withhold his wages, Zuccaro is not entitled to double damages.

3. Wrongful Termination

The Court GRANTS Defendant's motion for summary judgment regarding wrongful termination.

Zuccaro alleges his termination violated Washington public policy. In Washington, a wrongful discharge in violation of public policy requires (1) the existence of a clear mandate of public policy (clarity), (2) that discouraging the conduct would jeopardize the public policy

1  (jeopardy), (3) the employee's public policy linked conduct caused the termination (causation),
2  and (4) the employer's reason for the discharge is insufficient to override the clear mandate of
3  public policy (absence of justification). <u>Gardner v. Loomis Armored Inc.</u>, 913 P.2d 377, 382
4  (Wash. 1996).
5       Here, MobileAccess had a legitimate business reason for terminating Zuccaro's
6  employment. MobileAccess was undergoing a corporate reorganization in 2008 and 2009.
7  (Southworth Decl. ¶¶ 10-11.) During this time, half of MobileAccess's sales team was
8  terminated. (Southworth Decl. ¶ 11.) Even assuming Washington created a public policy
9  mandate with respect to the payment of wages, MobileAccess's reason for the discharge
10 overrides the public policy mandate. To the extent Zuccaro was terminated after he requested his
11 MBO1 bonus in July 2009, the temporal proximity of his third request for an MBO1 bonus is not
12 enough to survive summary judgment. MobileAccess's managers had considered terminating
13 Zuccaro in February 2009—even before his first request for an MBO1 bonus. (Braunschweig
14 Decl. ¶ 7 & Ex. B.) In addition, Zuccaro originally asked about his bonus in March 2009, yet he
15 was not terminated until August 2009.
16      Since there is no genuine issue of material fact that Zuccaro's termination was not in
17 retaliation for his request for an MBO1 bonus, the Court GRANTS summary judgment and
18 DISMISS Zuccaro's wrongful termination claim.
19 B. <u>Motion to Seal</u>
20      MobileAccess contemporaneously filed a motion to seal in accordance with the Court's
21 Local Rules. Specifically, MobileAccess seeks to file a redacted version of the summary
22 judgment motion and a supporting declaration and file under several exhibits relating to
23
24

1 | MobileAccess's business practices and personnel information. The Court GRANTS Defendant's
2 | properly filed motion to seal.
3 |      Under Local Rule 5(g), there is a strong presumption of public access to the court's files.
4 | However, a party may overcome the presumption by motion. Here, MobileAccess seeks to seal
5 | documents that may cause it competitive harm and/or relate to employees' private data. While
6 | Zuccaro argues no real competitive danger exists, Zuccaro's argument is unavailing. The
7 | documents include consolidated financial statements, spreadsheets containing base salaries,
8 | targets, and expected bonus and commission compensation, and email communications between
9 | MobileAccess officers regarding various business and employment decisions. MobileAccess
10 | supports its motion with an affidavit by Chief Financial Officer Michael Southworth, attesting
11 | that the documents have not been publicly available.
12 |      Since MobileAccess has overcome the presumption of public access, the Court GRANTS
13 | Defendant's motion to seal.
14 | \\
15 | \\
16 | \\
17 | \\
18 | \\
19 | \\
20 | \\
21 | \\
22 | \\
23 | \\
24 |

**Conclusion**

The Court DENIES Defendant's motion for summary judgment with respect to the bonus and state wage claims. A factual dispute exists as to whether the MBO1 bonus structure applied to Zuccaro's work on Tri-Power and Black Box. The Court GRANTS Defendant's motion for summary judgment with respect to Plaintiff's wrongful termination claim. The Court GRANTS Defendant's motion to seal.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 30th day of January, 2012.

Marsha J. Pechman
United States District Judge